## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| JORDYNN A. LACHANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-CV-2-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

### <u>MEMORANDUM OPINION</u>

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Jordynn A. LaChance ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

In February 2018, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since November 16, 2017, due to rheumatoid arthritis, depression, and anxiety. (Tr. 69-70, 81-82, 201). Her applications were initially denied. (Tr. 95-99). On June 26, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 102-03). After a hearing, the ALJ issued an unfavorable decision on May 21, 2020. (Tr. 10-23). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 163-65), but the Appeals Council declined to review the case on November 5, 2020. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, medical and vocational records, the Court accepts the facts as set forth in the parties' statements of facts and responses.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such

work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v.*

*Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ in this case found, at step one, that Plaintiff has not engaged in substantial gainful activity since November 16, 2017, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairment: rheumatoid arthritis. (Tr. 13). The ALJ also found the following medically determinable impairments: pineal gland and brain lesion/tumor, methylenetetrahydrofolate reductase (MTHFR)

mutation, gastroesophageal reflux disease (GERD), history of Rocky Mountain spotted fever status-post treatment, and Vitamin D deficiency. (Tr. 13). The ALJ found Plaintiff had the following medically determinable mental impairments: depression, bipolar, anxiety, panic disorder, and cannabis abuse. (Tr. 13).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15).

The ALJ found that Plaintiff had the following RFC:

 [Plaintiff can] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a), in that [she] can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. [Plaintiff] should be allowed to sit, stand or walk alternatively, provided that [she is] off task less than 10% of the work period. [She] should never climb ladders, ropes and scaffolds, kneel, crouch and crawl; and can occasionally climb ramps and stairs, balance, and stoop. [Plaintiff] can occasionally reach overhead and frequently reach in all other directions, handle, finger and feel bilaterally. [She] can occasionally use foot controls bilaterally. [Plaintiff] should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.

(Tr. 16). Moving to step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 21). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of the vocational expert and found that "there are jobs that exist in numbers in the national economy that [Plaintiff] can perform[,]" (Tr. 21-22), such as document preparer; egg processor; and credit checker, (Tr. 22). The ALJ concluded that Plaintiff "has not been under a disability . . . from November 16, 2017, through the date of th[e] decision." (Tr. 22).

## IV.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred in not finding Plaintiff's bipolar disorder to be severe at Step 2 of the sequential inquiry; and (2) the ALJ erred by failing to properly consider Francisco Garriga, M.D.'s opinion and base the RFC on the substantial evidence of the record.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good

reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  Severe Impairments

Plaintiff's first argument is the ALJ erred in failing to find her bipolar disorder to be severe.

At Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment," or "a combination of impairments that is severe," that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909; 404.1520(a)(4)(ii); 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including, among other things, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

While the requirement of severity is "not a toothless standard," it is also not an "onerous requirement." *Kirby*, 500 F.3d at 707. Additionally, though it is Plaintiff's burden to prove the existence of severe impairments, "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Id.* (quoting *Nguyen v. Chater*,

75 F.3d 429, 430-31 (8th Cir.1996)). Further, the ALJ may not "pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).

Here, Plaintiff argues that the ALJ singled out an appointment which stated her bipolar disorder was under control but that her longitudinal medical history supports a finding that her bipolar disorder is a severe impairment. She also contends that the ALJ's reliance on the State Agency psychological consultant does not amount to substantial evidence because the opinion pre-dates her bipolar diagnosis and June 2019 psychiatric hospital stay. Alternatively, Plaintiff asserts that the ALJ did not consider her bipolar disorder, even if considered non-severe, in combination with her severe impairment of rheumatoid arthritis. Responding, the Commissioner alleges that the ALJ properly considered the entirety of Plaintiff's medical conditions and adequately accounted for the degree of limitation supported by the record.

After careful review of the entire record and being mindful of both the deference due to the ALJ and the relatively low bar for finding an impairment to be severe, the Court finds that the ALJ's determination, that Plaintiff's medically determinable mental impairment of bipolar disorder was not severe, was supported by substantial evidence. It is clear from the ALJ's Decision that he considered Plaintiff's June 2019 psychiatric hospital stay in conjunction with the other evidence of record in concluding her bipolar disorder was non-severe. Although the ALJ only cited to the one medical encounter with Dr. Garriga (Tr. 13 (citing Tr. 446, 524)), the ALJ did not solely rely on this record to reach this conclusion, as evidenced throughout his Decision. "[W]here an ALJ thoroughly considers and discusses a claimant's complaints and symptoms relating to all her mental impairments, as well as her mental health providers' observations and treatment, will a court conclude the failure to find this condition severe was harmless." *Schwalje v. Saul*, No. 4:18-

CV-1314-ERW, 2019 WL 4575769, at *5 (E.D. Mo. Sept. 20, 2019) (citing *Mitchell v. Colvin*, No. 4:13-CV-131-CDP, 2014 WL 65386, at *25 (E.D. Mo. Jan. 8, 2014) (finding harmless error in failing to find bipolar disorder severe where the ALJ included bipolar disorder in his thorough analysis of claimant's complaints and symptoms relating to all mental impairments-including bipolar disorder-as well as her providers' observations and the treatment rendered and recommended for her impairments); (other citation omitted)).

Because the ALJ considered all of Plaintiff's mental health treatment in finding her bipolar disorder non-severe, the Court will affirm the ALJ's Decision in this regard. An ALJ's decision is not to be disturbed "so long as the . . . decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact." *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).

### C.  Opinion Evidence and the RFC Assessment

Plaintiff's second argument is the ALJ erred by failing to properly consider Dr. Garriga's opinion and base the RFC on the substantial evidence of the record.

Because Plaintiff filed her application after March 27, 2017, this Court applies 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, an ALJ is no longer required to "defer to give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of such opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20

9

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ acknowledged application of these new regulations in his opinion. (Tr. 16).

An ALJ determines the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). But an ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Plaintiff argues that it is unclear based upon the record how the ALJ determined Plaintiff could perform some of the requirements in the RFC, especially since an examining source (Dr. Garriga) opined she could not. Responding, the Commissioner asserts that the RFC is supported by substantial evidence.

The Court agrees with the Commissioner's arguments and holds that substantial evidence supports the ALJ's Decision. Plaintiff cites *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) for support, but that case is readily distinguishable. There, the Eighth Circuit found that the ALJ failed to develop the record because the ALJ failed to seek clarification from the claimant's treating physicians regarding the meaning of "no acute distress" and "normal movement of all extremities."

*Id.* at 646–47. Rather than seeking clarification, the ALJ improperly relied on his own interpretation of these terms when determining the weight to assign the opinions of two reviewing physicians, even though such findings were not necessarily relevant to the claimant's impairments. *Id.*

By contrast, the ALJ did not determine the weight to assign Dr. Garriga's opinion based upon vague statements made by other physicians. Instead, he found it partially persuasive because although the records showed severe physical impairments, Plaintiff's standing, sitting, and related restrictions opined by Garriga were unsupported by the record. As support for this conclusion, the ALJ reasoned:

> Specifically, the medical record typically shows the claimant in no distress, with normal ambulation and no muscle complaints. Further, the claimant testified they could lift 10 pounds, stand 1 hour at a time, walk 30 minutes to an hour at one time and sit one hour at one time. Further, the opinion is not consistent with his opinion one month later. However, [the ALJ] note[d] the medical record does support adding occasionally use foot controls bilaterally and never work at unprotected heights or with moving mechanical parts, occasional vibration due to rheumatoid arthritis. Further restrictions are not supported by medical record including that the claimant was first diagnosed with rheumatoid arthritis in 2013 and was able to work for years after that at substantial gainful activity, as well as her testimony that she could lift 10 pounds, stand 1 hour at a time, walk 30 minutes to an hour at one time and sit one hour at one time. In addition, the claimant has a boyfriend, does dishes, prepares meals, drives once a month and goes to the store once a week.

(Tr. 19-20) (internal citations omitted).[2] The ALJ used the same explanation for finding Dr. Garriga's December 2019 opinion only partially persuasive. (Tr. 20). Based on this explanation, it cannot be said that the ALJ used his own inferences to determine the medical evidence and reached his conclusion based upon all the evidence in the record, including Plaintiff's testimony, activities of daily living, and previous work history. Additionally, the ALJ gave partial credit to Dr. Garriga's opinion that the medical records supported some additional limitations, which the ALJ

---

[2]      The Court notes that the ALJ apparently wrote down the incorrect last name of Dr. Garriga. However, it is apparent that the ALJ was discussing Dr. Garriga's opinions based on the citations to the administrative transcript.

incorporated into the RFC. Although Plaintiff is correct that there are medical records showing some abnormal findings, this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Based upon the foregoing, the Court finds the RFC Assessment is supported by substantial evidence.

## V.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2022.

12